**The PEOPLE of the State of Colorado, Complainant,**

v.

**Jerome P. STINEMAN, Attorney-Respondent.**

No. 85SA202.

Supreme Court of Colorado, En Banc.

Jan. 31, 1986.

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Clifton J. Carney, Jr., Boulder, for attorney-respondent.

NEIGHBORS, Justice.

A formal complaint was filed with the Grievance Committee charging the respondent, Jerome P. Stineman, with several acts of professional misconduct which occurred while he was representing P.D. and J.D. as their attorney. The matter was heard by a hearing board which entered its findings, conclusions, and recommendations. The Grievance Committee approved the board's findings and conclusions, and its recommendation that the respondent be suspended from the practice of law for three months. The Grievance Committee also recommended that the respondent be assessed the costs of this disciplinary action, as well as those incurred in a companion disability proceeding which has been dismissed. Neither the disciplinary prosecutor nor the respondent has filed any exceptions to the findings, conclusions, and recommendations which have been lodged in this court. We approve the report and recommendations of the Grievance Committee.

I.

*The Facts*

The hearing board made the following pertinent factual determinations. The respondent was admitted to the bar in 1972, is registered as an attorney and, thus, is subject to the jurisdiction of this court and our Grievance Committee with respect to his conduct as an attorney.

Prior to 1981, the respondent had a social and professional relationship with P.D. and J.D. (clients). In early 1981, the clients advised the respondent that they were experiencing financial difficulties. The respondent loaned his clients various sums of money ranging from $100 to $500. All of these loans had been repaid by the fall of 1981.

In September 1981, the respondent loaned his clients $2,000. In December of that year, he loaned them $3,000 on each of two separate occasions. These transactions were in cash and there were no promissory notes or other written documentation reflecting the loans, totalling $8,000.

In January 1982, the clients decided to sell their residence in Lafayette, Colorado and move to Florida. The clients told the respondent that the $8,000 which they owed him would be paid from the proceeds of the house sale. The clients asked the respondent to assist them in the sale of their home and gave him a power of attorney to sell the property on their behalf. The clients suggested to the respondent that the power of attorney might give him some feeling of security regarding the repayment of the loans and the respondent agreed. The respondent participated fully in the sale of the house which was purchased by D.H., the listing agent for the property (purchaser). The closing was held on February 17, 1982. Because of the outstanding mortgages on the home, delinquent payments, and accrued interest on those payments, the clients were entitled to receive only $11,960.67 at the closing. The purchaser gave the respondent $1,460.67 in cash and a promissory note secured by a first deed of trust on the property. The note was made payable to the respondent as attorney in fact for his clients. The principal amount of the note was $10,500 with interest thereon at 12 percent per annum. The note became due and payable on May 17, 1982. The respondent forward-

ed the $1,460.67 he received to his clients in Florida and agreed with his clients that his $8,000 would be paid from the $10,500 payment due on May 17, 1982.

In March 1982, P.D. was arrested in Florida on several drug-related charges. J.D., his wife, called the respondent and asked him to advise the Florida attorney whom P.D. had selected to defend him, that the $6,000 fee which the attorney was requesting would be paid from the note due on May 17, 1982. The respondent initially refused to discuss this matter with the Florida lawyer, since he knew that he intended to recover his $8,000 from that payment. The respondent told J.D. that he would do nothing until he talked with P.D. The respondent and P.D. had a telephone conversation while P.D. was in jail. During that conversation, P.D. pleaded with the respondent to tell the Florida attorney whatever he needed to be told in order to convince the attorney to represent P.D., who was in jail and feared for his life.

On March 17, 1982, the respondent had a telephone conversation with the Florida attorney. The respondent misled the attorney into believing that the attorney could look toward the $10,500 note for payment of his $6,000 fee. The Florida attorney relied on the misrepresentation and agreed to defend P.D. in the criminal case.

On March 18, 1982, the respondent wrote to the Florida attorney and confirmed the earlier telephone conversation, assuring the attorney that the proceeds from the $10,-500 note was a source for the fee of $6,000.

The note payment which was due on May 17, 1982, was delayed because a *lis pendens* had been filed against the property by another individual based on claims not related to this matter. When the Florida attorney inquired about the delay in payment, the respondent assured him that the only claim that the respondent had against the proceeds of the note was approximately $400.

On May 25, 1982, the respondent drafted and entered into an escrow agreement with the purchaser. Under the terms of the agreement, the respondent was to receive the note payment on behalf of his clients and dispose of the funds after a title insurance policy was issued.

Thereafter, on June 14, 1982, the *lis pendens* was released. However, the respondent subsequently discovered that $2,000 was paid to his clients by the purchaser on June 18, 1982. On June 23, 1982, the respondent filed suit against his clients and the purchaser in the Boulder County District Court. The respondent sought to recover the $8,000 and also claimed attorney's fees for the work he had performed for his clients relating to the sale of the home. The purchaser contacted P.D. and J.D. and explained that the respondent had made demands for the money which he alleged was due him and was unsure as to whom payment should be made. P.D. and J.D. sought the advice of their Florida attorney. On July 6, 1982, that attorney wrote to the respondent and informed the respondent that he had been discharged from any further representation of P.D. and J.D. The attorney enclosed with his letter a document revoking the power of attorney. The attorney also wrote a letter to the purchaser requesting the $6,000 due him from the sale of the house. The letter contained a partial assignment of $6,000 to the Florida attorney by P.D. and J.D.

P.D. and J.D. then filed their grievance against the respondent. The respondent settled his claim with his former clients for $4,815. P.D. and J.D. were to receive the remaining $4,000 from the $8,815 which the purchaser was holding as his payment on the note. The lawsuit filed in the Boulder County District Court was dismissed with an order that the purchaser pay in accordance with the terms of the parties' settlement. The purchaser paid the respondent his money and the respondent prepared for his clients' signatures a *"pro se* contempt citation" against the purchaser for the payment of the $4,000 due to them. The purchaser eventually paid P.D. and J.D., who then requested that the grievance against the respondent be dismissed. That request was denied by the hearing panel.

During the pendency of the grievance matter, the respondent requested a continuance based upon his emotional condition. The continuance was granted. However, the disciplinary prosecutor filed a petition in this court requesting that the respondent be placed on disability inactive status. The respondent filed an objection to that petition. As a result, the respondent was examined by Dr. Frederick Miller.

On June 21, 1984, we ordered the disability proceeding dismissed and referred all matters to the hearing board for further proceedings. The hearing board reviewed our file in the disability proceeding and considered its contents in evaluating this case.

## II.

### Conclusions

The board found by clear and convincing evidence that the respondent's relationship in January 1982 with P.D. and J.D. was that of attorney and client, both when he acted under their power of attorney in connection with the sale of their house and when he represented himself as their lawyer in speaking to the Florida attorney. Moreover, he alleged in the suit brought against his clients and the purchaser of the house that he intended to be paid for his services as an attorney. The board also concluded that during the period of time from December 1981 to July 1982, the respondent violated DR5–101(A) by accepting employment under circumstances in which the exercise of his professional judgment would be, or reasonably could be, affected by his own financial, business, property, or personal interests. He also violated DR5–104(A) when he entered into a business transaction with his clients where the clients and the attorney had differing interests.

Finally, the hearing board found by clear and convincing evidence that the representation which the respondent made to the Florida attorney concerning payment of his fees was a misrepresentation calculated to induce the Florida lawyer to undertake the representation of P.D. This conduct constituted a fraud upon the Florida lawyer and the respondent thereby violated DR1–102(A)(4).

## III.

### Discipline

The seriousness of the respondent's professional misconduct adversely reflects on his fitness to practice law and tends to bring the legal profession into disrepute. We take note of the respondent's physical and emotional problems as described in the record. We also note that the respondent has relocated in Cincinnati, Ohio and has no plans to return to this state or to engage further in the practice of law. He terminated the practice of law voluntarily. Nonetheless, we believe that the three-month suspension recommended by the Grievance Committee is commensurate with the extent of the respondent's violations of his professional responsibility.

Accordingly, it is ordered that the respondent, Jerome P. Stineman, be suspended from the practice of law for ninety days; that he comply with the provisions of C.R. C.P. 241.21; and that he pay costs of $956.92 incurred in the disciplinary and disability proceedings to the Supreme Court Grievance Committee, 660 Seventeenth Street, Suite 500 South, Denver, Colorado 80202, within sixty days from the date of this opinion.